# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| GARY WARREN HANCOCK, JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 22-cv-50127 |
| UNITED STATES OF AMERICA, | ) Magistrate Judge Margaret J. Schneider |
| Defendant. | ) |

## ORDER

For the following reasons, Defendant's motion for summary judgment [81] is granted as to the intentional infliction of emotional distress claim and denied as to the remaining issues.[1]

## BACKGROUND

Gary Warren Hancock, Jr., an inmate at USP Thomson, filed this action under the Federal Tort Claims Act ("FTCA") and alleges on behalf of the two officers involved in the incident: (1) negligence when he was required to carry two duffle bags across the prison compound, resulting in him injuring his back; and (2) intentional infliction of emotional distress when he was required to carry and then continue to drag the two duffle bags across the prison compound after injuring his back. *See* Am'd Compl. at ¶¶ 19, 21, Dkt. 91. The sole defendant in this case is the United States, which has moved for summary judgment. Dkt. 81.

The undisputed facts for the purpose of this motion are as follows. On April 13, 2021, Hancock was placed in the Special Housing Unit ("SHU") of the facility. Def.'s Rule 56.1 Stmt. Facts ¶ 2, Dkt. 83. On this day, his property was inventoried and placed into two green duffle bags which, according to Hancock, weighed approximately 250 pounds. *Id.* ¶ 4-7. The property was transported to the SHU by an officer and was again inventoried on May 3, 2021. *Id.* ¶ 9. On May 17, 2021, Hancock was released from the SHU and transferred back to general population. *Id.* ¶ 10. He was then required to walk, with no restraints, from the SHU to general population. *Id.* ¶ 12-13. Hancock was escorted on this walk by officers who he believed to be BOP Officers Nowlting and Brubaker, although both officers testified that they do not recall this escort. *Id.* ¶ 14-16.

Hancock testified that his bags were on a cart in the Rotunda of the SHU and he asked Officer Nowlting if he could use the cart to transfer his bags. *Id.* ¶ 17. Officer Nowlting refused and told him to carry his bags. *Id.* While walking, Hancock began feeling pain before he got 15 yards away from the SHU, forcing him to put the bags down. *Id.* ¶ 18. As he continued to try to carry the bags, he felt pain in his lower back and told Officer Brubaker that he could not carry the

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 15, 17.

1

bags. *Id.* ¶ 19-20. However, the officers insisted he continue to carry his own bags. On the third time Hancock picked up the bags, he felt a popping sensation in his back, and he could no longer pick up the bags. *Id.* ¶ 20, 23. Officer Brubaker instructed Hancock to drag the bags and recommended he take one of Brubaker's exercise classes. *Id.* ¶ 24-25. In its entirety, Hancock estimates the walk took 7-8 minutes despite usually taking 2-3 minutes. *Id.* ¶ 38-39. When Hancock arrived at the gate to enter general population, two inmates saw that he was in pain and helped him carry his bags. Pl.'s Rule 56.1 Stmt. Facts ¶ 33, Dkt. 88. As a result of these events, Hancock testified that he had debilitating pain for two and a half weeks, a limp for three weeks, and was unable to exercise for at least two months. Def.'s Rule 56.1 Stmt. Facts ¶ 42-43.

Officers Brubaker and Nowlting both testified that they had no recollection of these events. *Id.* ¶ 16. Officer Brubaker testified that carts were typically not left out for security reasons, but it was possible that one had been left out by maintenance on the day of the transfer. Pl.'s Rule 56.1 Stmt. Facts ¶ 2. He also stated that carts were available throughout the facility, and he could not think of a reason why he would refuse an inmate who asked to use one to transport his belongings. *Id.* ¶ 3-5. Shelby Madden, who transported Hancock's bags to the SHU, similarly testified that she could not recall these events, but that typical procedure was to carry the property to the Rotunda to allow the inmate to collect it before leaving the SHU. *Id.* ¶ 10.

Conversely, Hancock and Artavis Williams, one of the prisoners who helped Hancock carry his belongings, both testified that they had used carts to transport property within general population and had heard of other inmates doing so as well. *Id.* ¶ 14. Hancock additionally testified that he had not previously used a cart to transport property from the SHU but that he had heard of other inmates being allowed to do so. *Id.* ¶ 12-13. Hancock also testified that the officers refused his request to use the cart because they did not want to have to bring it back to the SHU and that the cart was left unattended in the Rotunda during this time. *Id.* ¶ 27, 32.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that affects the outcome of the suit." *Fidlar Technologies v. LPS Real Estate Data Solutions, Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016) (internal quotations and citation omitted). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do this, the movant must either demonstrate "an absence of evidence supporting an essential element of the non-moving party's claim" or present "affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. Of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (internal quotations omitted).

In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A court's "job when assessing a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

## ANALYSIS

Defendant United States seeks immunity from liability for the conduct of officers Brubaker and Stoecker based on three theories: (1) the claim is barred by the discretionary function exception to the FTCA; (2) the claim is barred by Illinois' Federal Law Enforcement Immunity Act; and (3) Plaintiff was, as a matter of law, more than 50% at fault for his injuries. Defendant also seeks summary judgment for the claim of intentional infliction of emotional distress ("IIED") as Plaintiff is unable to prove intent or extreme and outrageous behavior.

Defendant also argues that it is entitled to summary judgment as to Plaintiff's medical negligence claim but this part of the motion is moot in light of Plaintiff's voluntary dismissal of this cause of action. *See* Dkt. 85.

### I. Discretionary function exception

Defendant first moves for immunity under the discretionary function exception to the FTCA. The United States typically enjoys sovereign immunity from suits for damages. The FTCA, however, waives this immunity in actions "for money damages… for… personal injury… where the United States, if a private person, would be liable" under the applicable state law. 28 U.S.C. § 1346(b)(1); *Parrott v. U.S.*, 536 F.3d 629, 635 (7th Cir. 2008). This waiver has limitations, one of which is the discretionary function exception. *See U.S. v. Gaubert*, 499 U.S. 315 (1991). This exception bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The exception's purpose "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Gaubert*, 499 U.S. at 322 (quoting *U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814, 104 S. Ct. 2755, 2765 (1984)). "It is the Government's burden to assert [this] exception [] if and when it seeks to defeat a claim because of [it]." *Parrott*, 536 F.3d at 634-35.

"The discretionary function exception is an affirmative defense to liability under the FTCA that the government must… prove." *Keller v. U.S.*, 771 F.3d 1021, 1023 (7th Cir. 2014). Hancock has fulfilled his burden to show the existence of jurisdiction under 28 U.S.C. § 1346(b)(1), which means the burden has shifted to Defendant to prove the applicability of the discretionary function exception of the FTCA. *Bunch v. U.S.*, 880 F.3d 938, 941 (7th Cir. 2018). As the Seventh Circuit has explained, this burden shift is to avoid requiring a plaintiff to "include allegations in [his] complaint designed to prove a raft of negatives—i.e., that each exception does not apply—and then to prove each of these negatives as part of [his] case-in-chief." *Bunch*, 880 F.3d at 942 (citing

*Stewart v. U.S.*, 199 F.2d 517, 519 (7th Cir. 1952)). Beyond this, the United States "will generally have superior access to the information that might trigger an exception." *Id.* (citing *S.R.P. ex rel. Abunabba v. U.S.*, 676 F.3d 329, 333 n.2 (3d Cir. 2012)). At this summary judgment stage, this means that Defendant must "show[] beyond reasonable dispute" that the officers' actions are protected by this exception. *Keller*, 771 F.3d at 1023.

### A. The *Gaubert* Two-Part Test

The Supreme Court has set forth a two-part test to determine whether challenged governmental conduct falls within the purview of the discretionary function exception.

First, the exception "covers only acts that are discretionary in nature, acts that involve an element of judgement or choice." *Gaubert*, 499 U.S. at 322 (citing *Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988)). "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (quotations omitted). On the other hand, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Id.* at 324.

Second, even if the challenged conduct involves an element of judgment or choice, courts must inquire "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23. Because the exception's purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort," the exception "protects only governmental actions and decisions based on considerations of public policy." *Id.* (citations and quotations omitted).

### B. The *Gaubert* Analysis

To properly complete the *Gaubert* analysis, the precise contested conduct must be determined. Hancock's amended complaint states:

> The actions of Officers Brubaker and Nowlting in forcing Mr. Hancock to transport a load of personal property weighing approximately 250-300 pounds, all the way across the prison compound, sadistically knowing that it was impossible for Mr. Hancock to carry this property, and refusing to allow Mr. Hancock to use a push cart when there were several push carts available, resulting in Mr. Hancock's injuring his back, all constituted the tort of negligence on the part of federal prison staff and violated the Bureau of Prison's duty of care under 18 U.S.C. § 4042(a).

A key dispute in this case is the availability of push carts for transportation of inmates' property. The government alleges that carts were very limited, while Hancock argues that, not only were carts available, but his belongings were on a cart in the Rotunda. This Court must interpret the facts in the light most favorable to Hancock as the non-movant. *See Scott*, 550 U.S. at 380. Accordingly, the conduct at issue is the officer's judgment in deciding whether to require Hancock to carry his own belongings as opposed to allowing the use of a cart or otherwise helping.

4

The first part of the two-step inquiry is satisfied in this case. The record does not contain evidence of, nor is there any allegation of, any regulation or policy that specifically required the officers to physically help carry Hancock's bags or allow him to use a cart to do so. Therefore, the choice whether to do so was within their discretion.

However, Defendant has not carried its burden with respect to the second step. Defendant first argues that "the movement, placement, and transfer of prisoners is a discretionary act because the acts inherently involve numerous policy considerations" and cites to several cases in support. Def.'s MSJ at 5, Dkt. 82. While all the cited cases support this contention, it does not control in this case. Hancock's lawsuit is not a challenge to the decision to transfer him out of the SHU. Rather, he challenges the officers' decision to require him to carry his personal property across the prison compound. *See Stacy v. U.S.*, 2021 WL 3849673, at *2 (N.D. Ill. 2021) ("Stacy's lawsuit is not a challenge to BOP's decision not to transfer him out of FCI Oxford to another prison. . . . . In short, the government is shooting at the wrong target; it can't simply redefine Stacy's claim to fit its preferred defense.") Defendant is falsely equating a decision not to transfer a prisoner – the contested act in all of Defendant's cited cases – with actions taken here during physically carrying out a transfer.

Hancock argues that Defendant failed to prove that the officers "actually" weighed public policy considerations, and the actions were thus not shielded by the exception. Pl.'s Resp. at 7. It is true that there was no showing in this case that the officers subjectively weighed certain considerations, given that the officers testified they cannot recall these events. However, the subjective intent of the officers is irrelevant to this analysis. *See Reynolds v. U.S.*, 549 F.3d 1108, 1112 (7th Cir. 2008) ("subjective intent is irrelevant to our analysis"); *S.R.P. ex rel. Abunabba*, 676 F.3d at 333 ("The focus of the inquiry is not on the agent's subjective intent…, but on the nature of the actions taken and on whether they are susceptible to policy analysis.") (citation and quotations omitted); *Palay v. U.S.*, 349 F.3d 418, 428 (7th Cir. 2003) ("[A]pplicability of the exception depends not on the intent of the government actor but on the nature of the actions taken.") (citation and quotations omitted). Therefore, Defendant need not establish that these officers themselves weighed policy considerations. The relevant inquiry is whether the nature of their actions is susceptible to policy analysis.

Nonetheless Defendant has not met the burden of showing this objective test can be satisfied on these facts. Defendant contends that the balancing of safety considerations is inherently subject to a public policy analysis. However, courts have routinely looked to the specific, contradictory considerations to determine if a contested act is one based on public policy. *See Varig Airlines*, 467 U.S. at 820 (Court looking to the balancing between "the goal of air transportation safety and the reality of finite agency resources"); *Calderon v. U.S.*, 123 F.3d 947, 951 (7th Cir. 1997) (balancing the conflicting interests of providing inmate security and "the rights of the inmates to circulate and socialize."); *Maas v. U.S.*, 94 F.3d 291, 297 (7th Cir. 1996) (Air Force balancing the benefit of warning veterans of new cancer statistics against the "resources and assignment of employees" this notice would require); *Callas' Estate v. U.S.*, 682 F.2d 613, 620 (7th Cir. 1982) (considering competing goals of "public use and enjoyment" against "the heightened risk of boating accidents).

Here, the competing interests Defendant points to are "officer safety, public safety, and security risks to inmate[s]" to be weighed against providing physical assistance to Hancock. Def.'s

5

MSJ at 5. However, it is not enough to simply put forth policy considerations. Defendant fails to explain what exactly these officer, public, and inmate safety issues are or to identify what balancing of interests would go into the officers' decision in this situation.

As discussed above, the contested conduct is simply the officers requiring Hancock to carry his belongings, regardless of what alternative method may have been available. Defendant does not put forth any specific policy considerations that would need to be considered in this scenario other than, again, a generalized security risk or safety risk. Def.'s MSJ at 6. Nor does Defendant explain how public policy would be implicated by BOP officials transporting Hancock's property, as was done when Hancock was moved to the SHU which was routine, as admitted by the government. *See* Def.'s Rule 56.1 Stmt. Facts ¶ 8-9; Pl.'s Rule 56.1 Stmt. Facts ¶ 15. Thus, it is unclear how a general security risk would be weighed against a prisoner's need for assistance transporting his personal items or how the weighing of these interests would result in the decision not to provide assistance. Defendant has not established that they "determined that [disallowing prisoners from using carts] best accommodates the goal of" prison security. *Varig Airlines*, 467 U.S. at 820. The Court then cannot say with any certainty that this is a "governmental action[] [or] decision[] *based on considerations of public policy*" warranting immunity from judicial scrutiny. *Maas*, 94 F.3d at 297 (emphasis in original).

Additionally, there remains a genuine dispute of material fact as to whether the officers were simply unwilling to carry the bags for reasons unrelated to policy considerations and thus unprotected by this exception. Hancock has alleged that the officers did not allow him to use a cart simply because they did not want to return it to the SHU. Pl.'s Rule 56.1 Stmt. Facts ¶ 27. On the other hand, the officers don't recall the events in question but do allege that they would not categorically deny an inmate the use of a cart. *Id.* ¶ 5, 9. Thus a genuine dispute exists as to whether this decision was simply one of apathy that "neither involve[s] an element of judgment or choice within the meaning of *Gaubert* nor [is] grounded in considerations of governmental policy." *Palay*, 349 F.3d at 431-32. When a genuine issue of material fact remains, this Court cannot and will not grant a motion for summary judgment. *See Celotex*, 477 U.S. at 323.

Because Defendant has failed to show "beyond reasonable dispute" that the contested actions are of the nature subject to policy analysis, this Court cannot conclude that the discretionary function exception to the FTCA provides immunity here. *See Keller*, 771 F.3d at 1023 ("To support summary judgment under the exception, the government must offer evidence that shows beyond reasonable dispute that its conduct was shielded by the exception."). Therefore, Defendant's motion for summary judgment is denied as it relates to this defense.

## II. Illinois' Federal Law Enforcement Immunity Act

Defendant argues in the alternative that Plaintiff's claims are barred by the Federal Law Enforcement Officer Immunity Act, 745 ILCS 22/10, as the correctional officers did not engage in willful or wanton conduct. This Court denies summary judgment on this affirmative defense as there remains a genuine issue of material fact on this issue.

The Federal Law Enforcement Immunity Act provides that "[a] federal law enforcement officer, while acting as a peace officer under Section 2-13 of the Criminal Code of 2012, is not

6

liable for his or her act or omission in the execution or enforcement of any law unless the act or omission constitutes willful and wanton conduct." 745 ILCS 22/10.

Because all Bureau of Prisons employees are authorized to make arrests, Defendant argues, they necessarily fall within the Act's purview. *See* 18 U.S.C. § 3050; *McIntosh v. U.S.*, No. 19 C 50322, 2022 WL 1092142, at *8 (N.D. Ill. Apr. 12, 2022) (holding that correctional officers removing a prisoner from his cell were "engaged in the 'execution or enforcement of any law'"). And because the officers were "plainly" not acting willfully and wantonly, Defendant reasons, Hancock's claims fail.

However, Hancock has made a sufficient showing that there is a genuine issue of material fact as to whether the officers' actions were willful and wanton. *See Kampier v. Emeritus Corp.*, 472 F.3d 930, 936 (7th Cir. 2007). Illinois law defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 ILCS 10/1-210. Further, "[t]his definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity." *Id.*

In general, "whether conduct is willful and wanton is ultimately a question of fact for the jury." *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1081 (7th Cir. 1998). Deciding this issue at the summary judgment stage is thus appropriate only if no "reasonable jury could find such conduct willful and wanton." *Carter v. Simpson*, 328 F.3d 948, 952 (7th Cir. 2003). Because the Court finds that there is a genuine issue of material fact that cannot be resolved at this time, Defendant's motion for summary judgment as to the Illinois Federal Law Enforcement Immunity Act is denied.

### III. Comparative fault

Defendant goes on to argue that Hancock's own "contributory fault" bars recovery as he assumed the risk of injury since he maintained a large amount of property despite his back pain.

Illinois follows a modified comparative fault model. The Court understands Defendant's argument as a reference to comparative fault. Defendant failed to return to this argument in its reply brief. While this alone is not a waiver, an argument is treated as being waived if the party raising it fails to respond to the opposing party's responsive arguments. *Kyles v. Beaugard*, 2023 WL 5277882, at *21 (N.D. Ill. 2023) (citing *Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023)). Therefore, a failure to include an argument in a reply only constitutes a waiver of that argument when the responding party raises "counterarguments or new arguments" in their response brief. *Id.*

Here, Defendant raised contributory fault in its opening summary judgment brief and Hancock responded. Hancock points to Defendant's lack of facts in support of this argument and challenges its contention that he should have limited his belongings. Instead of addressing these arguments, Defendant leaves this defense out of its reply. Therefore, this argument has been abandoned. Nonetheless, the Court will address the merits of this argument.

In Illinois tort actions, a plaintiff will be barred from recovery if they are found to be more than 50% at fault for their injury. *Rankins v. Sys. Sols. of Kentucky*, No. 19-cv-3775, 2021 WL 5415148, at *1 (N.D. Ill. Nov. 19, 2021). However, the "question of whether the negligence of [the officers] was the sole proximate cause or a contributing cause of the injury is an issue for the jury to decide under principles of comparative negligence." *Buchaklian v. Lake Cnty. Family Young Men's Christian Ass'n*, 732 N.E.2d 596, 603 (Ill. App. 2d Dist. 2000). Defendant's arguments do not convince this Court that Hancock's injuries were not of the type that a reasonable person would see as a likely result of the officer's conduct. *See First Springfield Bank & Tr. V. Galman*, 720 N.E.2d 1068, 1072 (Ill. 1999) (finding the relevant inquiry of legal cause is whether the injury is the type of injury a reasonable person would see as a likely result of his conduct).

Therefore, because the Court cannot conclude on this record that no reasonable jury could find that the officer's alleged negligence was a proximate cause of Hancock's injuries, Defendant is not entitled to summary judgment on this affirmative defense.

### IV. Intentional infliction of emotional distress

Plaintiff also brought a common law intentional infliction of emotional distress ("IIED") claim, to which Defendant argues he is not entitled. To prove an IIED claim under Illinois law, a plaintiff must establish that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen-El v. Cook County Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citation omitted). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* (citation omitted). Mere insults, indignities, threats, or annoyances do not qualify as extreme and outrageous conduct. *See Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 20-21, 180 Ill. Dec. 307, 607 N.E.2d 201 (Ill. 1992). Also, Hancock was required to establish that his distress was "so severe that no reasonable man could be expected to endure it." *Feltmeier v. Feltmeier*, 207 Ill.2d 263, 278 Ill. Dec. 263, 798 N.E.2d 75 (Ill. 2003).

Here, Hancock has not alleged conduct that was extreme or outrageous enough to support an IIED claim. Hancock makes the boilerplate allegation that the officers' actions caused him "severe emotional distress, mental anguish, and depression." Am'd Compl. ¶ 21. But his allegations do not state that the officers' conduct was extreme and outrageous or describe any such conduct. Nor does it state that the conduct was intended to inflict emotional harm upon Hancock. Simply put, even if the Court were to accept that the officers' conduct was unreasonable, Hancock does not allege intent or conduct that constitutes the type of extreme, targeted, and malicious conduct required for an IIED claim. *See Lopez Colunga v. Advocate Health and Hospitals Corporation*, 2023 Ill. App. 211386, ¶ 13, 232 N.E.3d 72, 472 Ill. Dec. 756 (Ill. App. 2023) ("[A] plaintiff must allege specific facts showing that the defendant acted with intent.").

Additionally, Hancock failed to address in his response any of Defendant's arguments relating to this claim. While this does not waive the issue in its entirety, this does make all of the facts alleged by Defendant undisputed. *See Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993) (holding that a failure to respond to a motion for summary judgment is not a waiver but does admit no material issue of fact). As discussed above, even without giving Defendant the presumption of

8

undisputed facts, Hancock has failed to allege extreme and outrageous conduct or intent as required for this claim.

Accordingly, the Court grants Defendant's motion for summary judgment as to Hancock's IIED claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to the intentional infliction of emotional distress claim and denied as to the claim of negligence.

Date: March 17, 2025                    Enter: _Margaret J. Schneider_
                                                United States Magistrate Judge